UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

RAMADA FRANCHISE SYSTEMS, }
INC., }
           }
    Plaintiff, }
           }         CASE NO. CV 95-B-1950-NW
v.         }
           }
R. MURTY KOLLI and RATNAGIRI }
RAO YADLA a/k/a "Gary" Yadla, }         ENTERED
           }
    Defendants.                         MAR 0 3 1997

## MEMORANDUM OPINION

This matter is before the court on cross motions for summary judgment filed by defendant R. Murty Kolli ("Kolli") on December 13, 1996, and by plaintiff Ramada Franchise Systems, Inc. ("Ramada" or "plaintiff") on December 16, 1996. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted, and plaintiff's motion is due to be denied.

This suit involves plaintiff's attempts, as a creditor of defendant Ratnagiri Rao Yadla ("Yadla"), to set aside a conveyance of real property from Yadla to defendant Kolli. Plaintiff maintains that because Yadla and Kolli engaged in the subject conveyance with the mutual intent to commit fraud, hinder, delay, and conceal assets of Yadla from his creditors, the conveyance should not be allowed to stand.

### I. FACTUAL SUMMARY

In a letter dated June 23, 1986, the predecessor in interest to the plaintiff in this case, Ramada Inns, Inc., terminated a license agreement allowing Yadla to operate a Ramada hotel,

and made demand upon Yadla for payments owed to it under the license agreement. (Am. Compl. at ¶ 6 & ¶ 12.) On September 8, 1986, defendant Yadla and his wife Vinaya conveyed their 23 percent interest to defendant Kolli and his wife in an apartment complex known as Pickwick Village Apartments. (Kolli Aff. at 3-4.)

On or about December 31, 1986, defendant Yadla filed a petition for Chapter 7 bankruptcy. (Am. Compl. at ¶ 9.) Thereafter, on April 2, 1987, Ramada filed a complaint in the bankruptcy matter in which it objected to the discharge of the debt owed to it by Yadla pursuant to the license agreement. (*Id.*) Ramada's objection was based upon 11 U.S.C. § 523(a)(2)(B), which excepts from discharge those debts obtained through a fraudulent writing. (*Id.*) On February 7, 1989, the United States Bankruptcy Court for the Northern District of Alabama entered an Order excepting the debt from discharge and granting Ramada a judgment on the debt for $134,282 together with post-judgment interest from that date, at a rate of 12 percent per annum. (*Id.*)

On July 27, 1995, Ramada filed suit in this court, maintaining that because the September 8, 1986 conveyance of Pickwick Apartments from Yadla to Kolli was fraudulent, it should be set aside, "so that plaintiff can accomplish execution of the property and the subsequent sale to satisfy its judgment." (Am. Compl. at ¶ 13.) Moreover, plaintiff also contends that Kolli's involvement in this conspiracy and efforts to facilitate and further conceal Yadla's assets prevented Ramada from collecting the amounts owed to it under the license agreement, and make Kolli personally liable for the amounts that Ramada could have collected but for the conspiracy. (*Id.* at ¶ 11.)

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED.R.CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of

evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

"An existing creditor seeking to set aside a conveyance may do so either because of actual fraud or on account of what is termed constructive fraud." *J.C. Jacobs Banking Co. v. Campbell*, 406 So. 2d 834, 841 (Ala. 1981) (quoting *Smith v. Wilder*, 120 So. 2d 871, 882 (Ala. 1960)). "Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. On the other hand, constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of actual intent." *Granberry v. Johnson*, 491 So. 2d 926, 928-29 (Ala. 1986). After a review of the facts and law relevant to this dispute, the court concludes that no reasonable jury could find that the conveyance at issue constituted either actual or constructive fraud.

As noted, on September 8, 1986, defendant Yadla and his wife Vinaya conveyed their 23 percent interest to defendant Kolli and his wife in an apartment complex known as Pickwick Village Apartments. (Kolli Aff. at 3-4.) Several months prior to the conveyance, Ramada terminated its license agreement with Yadla allowing him to operate a Ramada hotel, and made demand upon him for payments allegedly owed to it under the license agreement. (Am. Compl. at ¶ 6 & ¶ 12.) Before a conveyance can be deemed fraudulent, at a minimum, it must be shown that there is: 1) a creditor to be defrauded; 2) a debtor intending to defraud;

4

and 3) a conveyance of the property out of which the creditor could have realized its claim or some portion thereof. *J.C. Jacobs Banking Co.*, 406 So. 2d at 841 (quoting *Roddam v. Martin*, 235 So. 2d 654 (1970)). Furthermore, "[w]here it appears the transfer in question was made for a valuable consideration, a plaintiff . . . must show the mutual fraudulent intent of the parties to the transaction. Proof of the grantor's intent alone is insufficient to cause the conveyance to be set aside." *J.C. Jacobs Banking Co.*, 406 So. 2d at 834. (citation omitted).

In the case at bar, the conveyance in question was made for a valuable and adequate consideration. Kolli testified that in consideration for Yadla's 23 percent interest in Pickwick Apartments he assumed Yadla's personal mortgage with Southtrust Bank in the amount of $60,000.00. (Kolli Dep. at 72-73, & 77.) To determine whether the assumption of the $60,000.00 personal mortgage was sufficient consideration for the property, the debts by which the property was encumbered must be deducted from the total undisputed appraised value of the property, and then multiplied by 23 percent, the amount of Yadla's interest in the property. At the time of the conveyance, on September 8, 1986, the property was encumbered with a mortgage of $513,116.37. (*See* Ex. 13 to Kolli Aff.) When this figure is deducted from the undisputed appraised value of $745,000.00, the resulting figure is $231,883.63. Multiplying $231,883.63 by 23 percent results in the value of Yadla's 23 percent interest equaling approximately $53,333.00. Moreover, this calculation does not incorporate other factors that would have undoubtedly decreased the value of Yadla's interest, such as the fact that Pickwick Village Apartments owed Kolli approximately $55,000.00 in principal for amounts he spent on the property. (Kolli Aff. at 4.) Additionally, the 23 percent interest in question was owned by Yadla and his wife Vinaya, and not by Gary Yadla alone. (Kolli Aff.

5

at 5.) Finally, Dan David, the individual who was the Chairman, Chief Executive Officer, and President of SouthTrust Bank of the Quad Cities at the time of the conveyance, testified that, based upon his years of experience and training, the fair market value of Yadla's equitable interest would have been approximately $15,000. (David Dep. at 29 & 34.) In his opinion, the consideration paid for the 23 percent interest was, at least, adequate. (*Id.* at 38.) Thus, because the conveyance was made for a valuable and adequate consideration, it must be shown that both parties intended to defraud Ramada. This showing has not been made.

According to defendant Kolli, during July of 1986, Yadla and his wife approached Kolli and asked him to buy their 23 percent interest in Pickwick Village Apartments and the land adjacent thereto. (Kolli Aff. at 3.) Yadla told Kolli that he and his wife wanted to sell their interest because he had problems paying Ramada and he wanted to avoid the additional financial burden of the $60,000.00 debt to SouthTrust. (Kolli Aff. at 3.) Selling their 23 percent interest would allow Yadla to concentrate solely on paying his debt to Ramada. (*Id.*) Kolli informed Yadla and Yadla's wife that he did not know whether their interest was worth $60,000, plus accrued interest, but that he would contact SouthTrust and attempt to negotiate an agreement with the bank. (*Id.* at 3-4.) After negotiating with SouthTrust and reaching an agreement in which SouthTrust agreed to forego the interest that had accrued on the $60,000 principal, Kolli and his wife executed an Assumption Agreement, which required them to pay the $60,000 debt owed to SouthTrust. (*Id.* at 4.) Under the facts and circumstances surrounding this transaction, a reasonable juror could not conclude that either party, much less both, intended to defraud plaintiff.

## IV. CONCLUSION

Based upon the foregoing reasons, the court holds that there is no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment and denying plaintiff's Motion for Summary Judgment shall be entered contemporaneously herewith.[1]

DONE this 28th day of February, 1997.

SHARON LOVELACE BLACKBURN
United States District Judge

---

[1] Because plaintiff's claims against Yadla are identical to those of plaintiff's claims against Kolli, the court will also grant summary judgment in favor of Yadla, although he never filed a motion for summary judgment. Counsel for plaintiff has no objection to this procedure.